**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**GREGORY A. WATERS,**

        Petitioner,

      v.                                                    **Civil Action No. 5:23-CV-330
Judge Bailey**

**MRS. H. RAY,**

        Respondent.

**REPORT AND RECOMMENDATION**

**I.    Introduction**

On October 31, 2023, the pro se petitioner filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc. 1]. Petitioner is a federal inmate at FCI Hazelton, in Bruceton Mills, West Virginia, serving an 88-month term of imprisonment, to be followed by a three-year term of supervised release, imposed by the United States District Court for the Southern District of West Virginia on May 19, 2022, for his conviction for distribution of cocaine base, in violation of 21 U.S.C. § 846; §841(a)(1). [Docs. 1 at 2; 12-2 at 1-2]. He complains that he is eligible to earn time credits pursuant to the First Step Act ("FSA") and that the BOP is not prohibited from applying those credits to prisoners with a medium or high recidivism risk. [Doc. 1 at 5]. He also claims that the BOP has wrongfully denied him placement in the prison's Residential Drug Abuse Program ("RDAP"), that he is entitled under the FSA to be transferred to a facility closer to his home, or one where he can participate in RDAP, and further, that he has been

1

subjected to cruel and inhumane treatment since his arrival at Hazelton. [Doc 1 at 5-9].

The undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted at that time. Accordingly, an Order to Show Cause was issued to the respondent. [Doc. 10]. Respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, along with an accompanying memorandum of law on December 29, 2023. [Doc. 12]. On January 18, 2024, the petitioner filed a Response to the Motion to Dismiss. [Doc. 15]. On January 31, 2004, the respondent filed her Reply to the petitioner's response. [Doc. 16]. The matter is now before the undersigned for a recommended disposition pursuant to LR PL P 2. For the reasons set forth below, the undersigned recommends that respondent's motion be granted and that the petition be dismissed.

## II.     Background

Petitioner alleges that the Bureau of Prisons ("BOP") has unlawfully denied him application of time credits he has earned under the First Step Act. Specifically, he complains that although he is assessed as a medium recidivism risk, he nonetheless is eligible for the application of his earned time credits. [Doc. 1 at 5]. The record is undisputed that during his incarceration, the petitioner has been participating in, and has completed, numerous programs and productive activities. [Docs 1-3 at 1-11; 12-7; 12-8]. No earned credits have been applied to affect his release date, placement in prerelease custody, or supervised release. Petitioner argues that he is eligible to have these credits applied to his release, prelease transfer, or supervised release date. He asks the Court for a "time reduction" with respect to his FSA claims, to order the BOP to grant him the time he has accumulated toward the 365 days set aside for FSA, as well as for an Order

directing the BOP to designate him to RDAP at Hazelton FCI "asap," or in the alternative, to order his transfer to a facility nearer to his home where he would be able to participate in an RDAP program, [Doc. 1 at 2, 8].

Respondent has moved for dismissal, or in the alternative for summary judgment, claiming that the petitioner has not exhausted his administrative remedies and that, moreover, under the FSA, while the petitioner is eligible to *earn* time credits, the *application* of earned time credits is not permitted for prisoners assessed as a "medium" recidivism risk.

### III. Legal Standard

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. **Adams v. Bain**, 697 F.2d 1213, 1219 (4th Cir. 1982); **Mims v. Kemp**, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. See **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. See Fed. R. Civ. P. 12(h)(3).

## B. Motion to Dismiss for Failure to State a Claim

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.' ***Bell Atl. Corp. v. Twombly***, 550 U.S. 554, 570 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. ***Anheuser-Busch, Inc. v. Schmoke***, 63 F.3d 1305, 1312 (4th Cir. 1995). In ***Twombly***, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." ***Id***. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." ***Williams v. Branker***, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 F. App'x 395, 396 (4th Cir.

4

2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint.  *Id*. at 396–97.

### C. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts*.*"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed. **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

### III. Discussion

**A. The petitioner's claims herein are subject to dismissal for his failure to exhaust administrative remedies**

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under § 2241. See **Braden v.30th Judicial Circuit Court**, 410 U.S. 484, 490-91 (1973); see also **McClung v. Shearin**, 90 F. App'x 444, 445 (4th Cir. 2004) (citing **Carmona v. United States Bureau of Prisons**, 243 F.3d 629, 634-35 (2d Cir.2001); **Sites v. Warden, FCI Hazelton,** No. 5:21-CV-184, 2022 WL 706959, at *1 (N.D. W.Va. Feb 15, 2022) (Mazzone, M.J.), *report and recommendation adopted*, No. 5:21-V-184, 2022 WL 698061 (N.D. W.Va. Mar. 8, 2022) (citations omitted). Because the exhaustion requirement is judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances, and accordingly, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. **Sites** at *1 (*citing* **LaRue v. Adams**, 2006 WL 1674487, at *5-7 (S.D. W.Va. June 12, 2006) (citations omitted)). However, even in cases where the administrative process is unlikely to grant an inmate relief, courts have enforced a longstanding policy favoring exhaustion. *Id.* (citing **Alexander v. Hawk**, 159 F.3d 1321, 1327-28 (11th Cir. 1998)).

The Bureau of Prisons provides a four-step administrative process through which prisoners can request a review of any aspect of their imprisonment, beginning with an informal request to prison staff (BP-8) and progressing to the filing of a written complaint to the warden in the event a satisfactory resolution is not achieved informally (BP-9), followed by an appeal to the Regional Director(BP-10), and ultimately a final appeal to the Office of General Counsel (BP-11). See 28 C.F.R. § 542.10, *et seq.* An inmate is not deemed to have exhausted administrative remedies until a complaint has been filed at all levels. 28 C.F.R.§ 542.10-542.15; **Gibbs v. Bureau of Prison Office, FCI**, 986 F.Supp. 941, 943 (D. Md. 1997).

The petitioner herein marked "yes" in response to the question as to whether he had presented the facts related to his present petition through the prison's internal grievance procedure, but with respect to the results he received, petitioner answered: "Nothing. Grievances never responded to at no level of the prison."  [Doc. 1 at 6]. Despite petitioner's assertion, however, a review of his administrative remedy history shows that he filed, or attempted to file, six administrative remedies, five of which were rejected, and further, that routinely, he simply failed to correct the noted procedural deficiencies and submit his remedy requests properly.  [Doc. 12-1 at 9].  A copy of petitioner's "Administrative Remedy Generalized Retrieval" dated 12-22-23 [Doc. 12-5] is attached to the Affidavit of Misty Shaw, Paralegal at the Mid-Atlantic Regional BOP Office, [Doc. 12-2] filed in support of the respondent's Motion and reflects the following:

   1  On October 21, 2022, petitioner filed administrative remedy number 1136939-F1 with Hazelton regarding "sentence computation request." On December 9, 2022, the institution denied the request.

   2  On December 19, 2022, petitioner filed administrative remedy number 1145703-R1 with the Mid-Atlantic Regional Office regarding "RDAP." On

7

        December 21,2022, the Office rejected the request because Petitioner filed it with the Regional Office before he filed with the institution.

3. On March 16, 2023, petitioner filed administrative remedy number 1154630-F1 with Hazelton regarding "detainers." On March 16, 2023, the institution rejected the request because Petitioner submitted too many continuation pages.

4. On July 20, 2023, petitioner filed administrative remedy number 1169258-R1 regarding "staff complaint/recidivism rate" with the Mid-Atlantic Regional Office. On July 21, 2023, the Office rejected the request because petitioner did not submit a request to the institution first, he did not submit the request on the appropriate form, and he submitted too many continuation pages.

5. On August 7, 2023, petitioner filed administrative remedy number 1169258-R2 regarding "staff complaint/recidivism rate" with the Mid-Atlantic Regional Office. On August 8, 2023, the office rejected the request and explicitly informed Petitioner: "You must submit BP9 to the institution and receive a signed warden response before appealing at the Regional level."

6. On August 14, 2023, petitioner filed administrative remedy number 1169258-R3 with the Mid-Atlantic Regional Office. On August 16, 2023, the office rejected the request because Petitioner did not submit his request to the institution first and he submitted too many continuation pages.

[Docs. 12-2 and 12-5]. Thus, it is clear from the record history that the petitioner failed to properly submit remedies and to comply with the process, and further, that he never filed an administrative remedy with the BOP Central office, the last level of the process. In this respect, it is further noted that rejected remedies do not constitute "a final determination on the merits." See **Nagy v. Bayless**, No. 3:23-cv-00069-GMG, at *8 (N.D. W.Va. Sept. 22, 2023) (Trumble, M.J.), *report and recommendation adopted*, No. 3:23-cv-00069-GMG (N.D. W.Va. Oct. 25, 2023). Additionally, a federal prisoner's administrative remedy is not exhausted where, as here, he or she is expressly instructed to resubmit a deficient submission and fails to do so. ***Martinez v. Warden, USP Hazelton***, No. 2:16-CV-31, 2017 WL 988661, at *7 (N.D. W.Va. Feb 16, 2017) (Seibert, M.J.), *report and*

8

*recommendation adopted*, No. 2:16-CV-31, 2017 WL 988660 (N.D. W.Va. March 14, 2017) (citations omitted).  Petitioner's conclusory and unsupported assertion that his grievances were "never responded to" at any level [Doc. 1 at 6] is insufficient to overcome the exhaustion requirement. His claim herein is clearly unexhausted and is subject to dismissal for his failure to exhaust administrative remedies.  Nonetheless, even if petitioner's claim could survive his failure to exhaust administrative remedies, his petition is subject to dismissal.

   **B. While Petitioner is eligible to *earn* time credits under the First Step Act, he is not eligible to have them *applied* toward either his release date, transfer to earlier placement in pre-release custody, or supervised release**

The First Step Act of 2018 ("FSA") establishes a system of "time credits" ("FTCs") and provides eligible inmates the opportunity to earn these credits by participating in evidence-based recidivism-reduction programming and productive activities. 18 U.S.C. § 3632(d)(4)(A).   Under the Act, FTCs can be applied toward earlier placement in pre-release custody or supervised release.  18 U.S.C. § 3632(d)(4)(C).   At the time of its passage, the Act also required the Attorney General to develop a "risk and needs assessment system," to be used by the BOP to determine the recidivism risk of all federal prisoners; classify them as having either a minimum, low, medium, or high risk of recidivism; and further, to  "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(1),(4).

In compliance with the Act's mandate, the BOP created the "Prisoner Assessment Tool Targeting Estimated Risk and Needs," a risk assessment tool, otherwise known as PATTERN, to predict the likelihood that an offender will re-offend upon release from

9

prison. *See* BOP Program Statement 5410.01: First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), dated November 18, 2022, at Section 5.  The Act requires the BOP to determine the recidivism risk of each prisoner "as part of the intake process," and further, that the recidivism risk of each prisoner successfully participating in programming or activities be "periodically" reassessed at "regularly scheduled" program reviews. 18 U.S.C. § 3632(a)(1), (4); Program Statement 5410.01, First Step Act of 2018 – Time Credits: Implementation of 18 U.S.C. § 3632(d)(4), *supra*, section 5.

Section 3632(d)(4)(A) of the Act provides that  "A prisoner, **except for an ineligible prisoner under subparagraph (D),** who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate of "10 days time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" with the possibility to earn an additional 5 days per 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A) (emphasis added).  Prisoners are ineligible to **receive** time credits if they are serving a sentence for a conviction under one of several provisions of law set forth in 18 U.S.C. § 3632(d)(4)(D).  Petitioner argues that he is eligible under the Act to have his earned credits applied to his release date, prelease custody or supervised release.  While he acknowledges that he does not have a recidivism score of "low" or "minimum," he contends that the intent of the Act when passed was not to restrict the award of time credits to only those prisoners with low and minimum scores. [Doc. 1 at 5]

Petitioner's argument, however, overlooks the fact that there is a clear distinction between the ability to earn time credits and the application of those credits to affect one's

release date, prerelease custody or supervised release.  The application of time credits to prerelease custody or supervised release is governed by 18 U.S.C. § 3624(g).  Section 3624(g)(1) sets forth the criteria for eligibility[1]:

> **(1) Eligible prisoners.**--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
>
> **(A)** has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> **(B)** has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> **(C)** has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
>
> **(D)(i)** in the case of a prisoner being placed in prerelease custody, the prisoner—
>
>> **(I)** has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>>
>> **(II)** has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that—
>> **(aa)** the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
>>
>> **(bb)** the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
>>
>> **(cc)** the prisoner is unlikely to recidivate; or

---

[1] The undersigned notes that an additional criteria for eligibility to apply credits is found in § 3632(d)(4)(E), which bars prisoners who are subject to a final order of removal under any provision of the immigration laws from applying time credits.

> **(ii)** in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner

18 U.S.C. § 3624(g)(1).  A prisoner, therefore, may be eligible under 18 U.S.C. § 3632(d) to earn and receive time credits but not be eligible to have those credits applied under 18 U.S.C. § 3624(g).

Currently, the petitioner's risk score is medium, and it has remained a medium over the past four times that he has been assessed between December 2022 and October 2023.  [Doc. 12-6; 12-8].  According to respondent, petitioner's "extensive criminal history" results in 40 criminal history points on the "static factors" portion of his PATTERN assessment, and accordingly, "[b]ased on the current PATTERN guidelines, petitioner will always remain a medium risk inmate. [Doc. 12-1 at 17]. The statute does, however, contain a safety valve provision for inmates who cannot meet this recidivism threshold, and which provides that the warden may exercise discretion to apply a prisoner's earned credits toward prerelease custody or supervised release, upon determining that the prisoner (1) "would not be a danger to society if transferred to  prerelease custody or supervised release," (2) "has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities;" and (3) "is unlikely to recidivate." 18 U.S.C. § 3624(g)(1)(D)(i)(II)(aa-cc); 28 C.F.R. § 523.44(c)(2).  This type of request is initiated by submitting a BP-A0148, Inmate Request to Staff, during his or her regularly scheduled Program Review. BOP PS 5410.01: <u>First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)</u>, *supra*, at Section 10, p.16.

Thus, a prisoner wishing to have earned time credits applied toward placement in prerelease custody or supervised release under the First Step Act must either: (1) be determined to be a MINIMUM or LOW risk of recidivism for the last two reassessments, or (2) have successfully petitioned the warden for approval. 18 U.S.C. § 3624(g). While petitioner has been consistently participating in programing, and as he describes it, "methodically working" to reduce his recidivism risk level [Doc. 1-3 at 7-8], nonetheless, because his score is not "low" or "minimum," and because there is no indication that he has successfully petitioned the warden for approval to apply earned time credits to prerelease custody or supervised release, or that the warden has exercised his discretion to allow petitioner to transfer to prerelease custody, it thus plainly appears on the face of the petition that he has failed to state a claim and that the petition should be dismissed.

### C. Petitioner's requests for Court-ordered RDAP placement and/or transfer to another facility are not proper subjects for a § 2241 petition

Petitioner states that outside of time credits, he is entitled to certain "incentives" under the FSA, which "clearly" include transfer to a nearer facility. [Doc. 1 at 5]. Such incentives are addressed in Section 3632(d) of the Act, which provides that the BOP "shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reductions program." Among these additional incentives, which may be awarded outside of time credits, is the opportunity to be considered by the BOP "for placement in a facility closer to the prisoner's release residence." Id. Thus, upon "request from the prisoner" and subject to specific statutory criteria which include (1) bed availability, (2) the prisoner's security designation, and (3) the recommendation of the warden at the facility where the prisoner is incarcerated at the time of making the request, a prisoner who might be ineligible for FSA time credits can still receive other incentives

13

and rewards for participating in and completing evidence-based recidivism reduction programing. 18 U.S.C. § 3632(d)(2)(A)-(C); *See also* BOP Program Statement 5220.01: First Step Act Program Incentives, dated July 14, 2021. Nonetheless, as respondent correctly points out, pursuant to 18 U.S.C. § 3621(b), it is the BOP that "shall designate the place of the prisoner's imprisonment" and further that, pursuant to 18 U.S.C. § 3625, such determinations are exempted from judicial review. Moreover, since petitioner's request is not one which affects either the fact, or duration, of his confinement, it is accordingly not a proper subject for a §2241 petition. Similarly, with respect to his complaints regarding the BOP's failure to accommodate his requests for RDAP placement, to the extent petitioner is seeking a transfer from one form of custody to another, as is the case with requesting transfer from one BOP facility to another, such a request is not a challenge to the fact or duration of confinement, but rather a matter within the sole discretion of the BOP and not a proper subject for a habeas. Additionally, respondent points out that petitioner's interview for determining his RDAP eligibility was "pending" at the time respondent filed her Motion to Dismiss, or in the Alternative for Summary Judgment. [Doc. 12-1 at 22]. In this regard, he undersigned further notes that on February 9, 2024, petitioner notified the Court that he was, in fact, being transferred to another facility "to get in RDAP." [Doc. 17]. In any event, the Court is without jurisdiction to entertain this claim pursuant to § 22241, and it is accordingly subject to dismissal.

### D. Petitioner's complaint of cruel and inhumane treatment is not cognizable in this § 2241 petition

It is well established that a § 2241 petition is appropriate where a prisoner challenges the fact or duration of confinement, but generally not the conditions of confinement. *See* ***Preiser v. Rodgriguez,****,* 411 475, 499-500 (1973). In order to pursue the type of civil

rights claims raised in his petition, a civil rights lawsuit governed by *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 399 (1971) is the appropriate vehicle. *Marcum v. Esparza*, No. 2:10CV107, 2010 WL 4955703, at *1 (Sept. 14, 2010) (Seibert, M.J.) *report and recommendation adopted*, 2010 EL 4955701 (N.D. W. Va. Nov. 30, 2010).[2] Petitioner's civil rights claim herein must accordingly be dismissed.

### V. Recommendation

For the foregoing reasons, the undersigned recommends that the Motion to Dismiss, or in the Alternative, for Summary Judgment [**Doc. 12**] be **GRANTED** and the petition [**Doc. 1**] be **DENIED** and **DISMISSED WITH PREJUDICE**. The undersigned further recommends that the Motion to Hold/Continue Any and All Mail [Doc. 17] be **DENIED** as **MOOT**.

Within fourteen (14) days after being served with a copy of this report and recommendation, the petitioner may file with the Clerk of Court **specific written objections identifying those portions of the recommendation to which objection is made and the basis for such objections**. A copy of any objections shall also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless

---

[2] The undersigned notes that petitioner already has, in fact, filed a lawsuit in this Court pursuant to *Bivens* alleging the same "cruel and inhumane punishment," he complains of herein. See *Waters v. Brown, et.al*., Civil Action No. 5:23-CV-00019; *See also* [Doc. 1 at 8], where petitioner states that the claims herein have already been presented in Civil Action No 5:23-CV-19. On February 21, 2023, this Court dismissed the case pursuant to the doctrine announced in *Egbert v. Bourle*, 142 S.Ct. 1793 (2022). The Fourth Circuit Court of Appeals affirmed the decision of the District Court on August 16, 2023. *Waters v. Brown, et. al*. No. 23-6101 (5:23:cv-00019).

15

accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**: February 13, 2024.

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE